All right, our next case for argument this morning is Mateo-Mateo v. Garland. Ms. Kahn. Good morning, Your Honors. Good morning, Your Honors. My name is Afshan Kahn, and I present the appellants, Ms. Eulalia Mateo-Mateo and her two minor children in this matter. As all of you are aware, this case comes from the Board of Immigration Appeals based on an affirmation of the denial of the Immigration Court of my client's claim for asylum. We are requesting a grant of petition for review as we believe there are two issues at hand. We believe that, unfortunately, the Immigration Court as well as the Board of Immigration Appeals erroneously denied my client's application. The first issue being whether my client, Ms. Mateo, suffered harm on account of a recognizable particular social group, one of the protected statutory grounds under asylum, as well as, secondly, whether the serious inflection of harm that my client suffered while being in Guatemala and causing her to flee her country would constitute a form of relief under humanitarian asylum itself. I will address the first issue. Ms. Kahn, before you do, please, you haven't challenged the Board's decision that the Guatemalan government is not unable or unwilling to protect her, and that is required for the asylum determination. Doesn't that alone defeat your appeal? No, Your Honor. Respectfully, I would say that we did make that argument during the course of our proceedings during the Immigration Court complaint. You haven't argued it in your appeal. You haven't challenged that finding by the Board in your appeal here. Respectfully, we will still continue to challenge that. We believe that the government would be complicit should Ms. Mateo return, be subject to going back to Guatemala, and be subject to the continued harm that she would face by her, for lack of better terms, in-laws themselves. But I didn't see that argument in your briefing. Respectfully, I do apologize if that was not explicit in the actual briefing itself, but it is something that we've been contending since the beginning of her proceedings from her Immigration Court in front of the Immigration Judge as well as just going forward. We continue to assert that it is very likely that the Guatemalan government would be complicit to it, that they would not act and intervene, and that is one of the reasons why my client as well, she felt it was futile to contact the Guatemalan police, because they refused to take action from her experiences in these types of situations, as they're considered domestic situations where she has to sort of resolve on herself. Going forward now, as you know, under INS Elias Zacarias, the requirement for asylum is that you must show that the past harm is on account of one of the statutory protected grounds. Here specifically, it's a particular social group. And for a particular social group, while it's not defined by the INA, the matter of ACOSTA as well as many of the circuit courts as well as this current honorable court have defined it based on particularity, immutability, and socially distinct within that society. We're also arguing, as this court had in its seminal case of Cheche V. Holder in 2013, that gender and nationality are two factors, immutable factors, that can constitute a particular social group itself. In Cheche V. Holder, this court en banc had found that the individual, the applicant, being a young, single Albanian woman, because of those factors, are immutable characters that constitute a particular social group. If I could interrupt for a moment, please. The issue is not the nature or definition of the social group, but the lack of a nexus. And that's what the board rested its decision on. Yes, and we'll continue with that. And I'll get into that right now. So what we're seeing here in terms of social groups, similar to Cheche V. Holder, we're seeing that my client, being an unmarried Guatemalan mother of two, being that her partner at the time was not someone who was providing protectors or providing any help or assistance while she was facing this abuse by her, for lack of better terms, in-laws. So let's assume, for the purpose of argument, that she belongs into a cognizable social group. Can you answer Chief Justice's question about nexus? So in terms of the account of, it's clear that the two years that she was in the family home of her in-laws, she was subject to physical abuse, beatings, to the point where I think her mother-in-law tried to terminate her second pregnancy as well, all because the mother-in-law saw her as this unmarried young woman at her home. What evidence supports the last part of that? The court found that the abuse that she suffered while living in the home wasn't linked to the social group that you've identified. And as you know, the standard is does substantial evidence support that? And you have to show us that there's record evidence that compels a different conclusion. What is that record evidence that would compel us to conclude that the abuse she suffered was because of the social group she was in? Of course. So during my client's testimony in her initial hearing, she had stated that she felt her mother-in-law had acted that way because of the fact that she was there, she was with her son, the father of her son, which is her son, and she felt that it was because of those elements, the fact that she was unmarried with her two children at the home, she had every right and no impunity to be able to act the way she did towards my client. She was able to take those actions against her, the verbal abuse, psychological abuse for those two years that she endured, and based on that evidence, she was able to see that because she saw that her mother-in-law saw her as someone that could just accept it, and that being an unmarried young woman with these two children at her home, that she just had to take on that abuse without any type of relief or any type of recourse from the Guatemalan police or the Guatemalan government itself. So based on that, on the account of showing that the abuse that she faced was on account of the fact that she was seen by her perpetrator, by the mother-in-law, as someone that was unmarried, and then when her partner left in 2014, I believe, being on her own, and when she did try to leave the home, she was still encountering this abuse and this harm because the mother-in-law felt that she could do whatever she wanted without impunity itself. Now moving on to the second issue, again, we're also asking, looking at the complete seriousness of the harm itself, if that would qualify for her for humanitarian asylum. This court has held that humanitarian asylum is, so to speak, even on rare cases. And here I believe that my client has met her burden. Humanitarian asylum requires that there must be a compelling reason that the applicant is unwilling to return to her native country or that there will be serious harm should she go back to that country. Here, my client, she suffered harm for more than two years in the home where she was beaten on a regular basis, verbally abused, psychologically abused. She was beaten to the point where the mother-in-law did want her to terminate her second, the unborn child, her second unborn child. The abuse stopped, though, when she moved out and moved in with her family, right? Unfortunately, the abuse still continued. While she may not have seen that on a daily basis, the mother-in-law still continued to, whenever she did have any encounters with her, she continued to commit verbal abuse towards her. And at one point, she did try to take the children. But there was no physical abuse. Yes, the physical abuse stopped, but she did try to kidnap the children themselves because she didn't want them to be raised in her, in my client's faith as being a Catholic. I realize I do have two minutes. If it's okay with all of you, I would want to reserve additional time. Should I need to respond to any of counsel's arguments? That's fine. Mr. DiMaggio. Good morning, Your Honors. May it please the Court. Giovanni DiMaggio on behalf of the Attorney General of America Island. Your Honors, the outcome of this case is controlled by Ms. Mateo Mateo's forfeitures and failure to exhaust. We ask that the Court would uphold the denials of the claims of asylum, withholding of removal, and humanitarian asylum premised on her asserted past persecution on account of a particular social group because she forfeits any challenge to the agency's dispositive, unevil, or unwilling determination, which I take from Ms. Kahn's argument just moments ago is a conceded point, as she admitted that this is not addressed in the briefing. This should be, can be, and should be the be-all, end-all of that aspect of the case. And secondly, the Court cannot review Ms. Mateo Mateo's unexhausted cat protection arguments, which fall outside of the Court's scope of review as well. I also will note that it appears that that issue is conceded as well. Ms. Kahn expressly premised her entire argument on two points only, whether the harm was on account of a particular social group and whether that harm should warrant a grant of humanitarian asylum and did not address the cat whatsoever. That's really all this is about. If Your Honors have any specific questions on either of those two points, I'm happy to address them, or on the alternative basis for affirming the asylum withholding and humanitarian asylum claims, which I'm happy to discuss as well. Thank you. You came a long way. Thank you, Your Honors. For that reason, the government asks that you deny the petition for review. Thank you. All right. Ms. Kahn, anything further? Your Honors, as I had stated previously, while it may not have been explicit in the briefings themselves that was submitted, I would say that the argument of the government complicity was something that we had argued in the initial hearings and something that we continue to argue and we hold to as well, that the government of Guatemala, unfortunately, would not be a government that would provide any kind of intervention or help to my client should she go back and face the same harm that she faced years ago. Unfortunately, Guatemala itself and the country condition report showed this, that she was someone who would—unfortunately, there is a high level of femicide, and many of these instances happen in the domestic space itself. And it's clear that the government of Guatemala itself fails to take any action and intervene in these types of circumstances. Apart from this, also, we would like you to grant this petition for review because we would like the BIA and the Immigration Court to consider my client's claim under humanitarian asylum. This is something that was not really considered in either of those courts and those decisions, and I believe—we believe that Ms. Mateo should be able to have that opportunity to reconsider that and to see if the harm that she suffered for the two years that she stayed in the home and then the two years afterwards where she was constantly being verbally abused, where she was being assaulted in the middle of the street. She may have not faced physical abuse, but the constant threat and the fear that she lived in, seeing her mother-in-law and seeing, I guess, family members of her, the father of her children, coming after her and knowing that there's no recourse for her should constitute this type of serious harm that she could face should she go back. So we hope, based on that, that you may grant a petition for review for Ms. Mateo. All right. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement.